# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-401 |
| RUBEN FILIPE GABRIEL MARTINS<br>a/k/a "Feepsy" | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Over the course of two years, defendant Ruben Filipe Gabriel Martins stole over one million dollars worth of cryptocurrency from at least nine victims.  Using conniving social engineering tactics, Voice-Over-IP technology, and sophisticated phishing panels, he and his coconspirators tricked these victims. They posed as Coinbase customer support, calling victims and pretending to help with their compromised accounts – the proverbial wolves in sheep's clothing.  Concerned about the safety of their cryptocurrency investments, the victims were grateful for the help and revealed access codes to their accounts. Within minutes, the victims' funds were gone. Martins and his coconspirators then laundered the stolen funds by swapping them into different cryptocurrencies and using them to gamble online. In doing this, Martins not only stole the victims' money and financial security, but also wreaked emotional havoc on them and their families. For these reasons, as well as for the reasons provided below, the government is seeking a significant sentence consistent with all the factors under Section 3553(a), as further addressed in the Sealed Supplement.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I.    BACKGROUND

On September 23, 2025, pursuant to a written plea agreement, the defendant pled guilty to a four-count Information charging him with: wire fraud conspiracy, in violation of 18 U.S.C.

---

[1]  Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

§ 1349; wire fraud, in violation of 18 U.S.C. § 1343; aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h). During his plea colloquy, the defendant admitted that he was part of a worldwide criminal organization called "The Com," a geographically diverse group of individuals, including many juveniles, who coordinate through online communication applications such as Discord and Telegram to engage in criminal activity including computer/account intrusions, SIM swapping, and cryptocurrency theft. The defendant also admitted that he was part of "CryptoChameleon," a subgroup within the Com that employs sophisticated phishing panels that mimic the sign-on pages for cryptocurrency companies, email providers, and other online services. Using the CryptoChameleon phishing panel and other tools, the defendant and his conspirators caused text messages, voice calls, links, and push notifications to be sent to victims, tricking them into revealing their account log-in information, passwords, multi-factor authentication codes, seed phrases, and other means of identification. Using this fraudulently obtained information, the defendant and his conspirators accessed the victims' accounts and stole their cryptocurrency. After a successful theft, the defendant and his coconspirators laundered the funds by, among other things, converting the funds into different cryptocurrencies, including a particular cryptocurrency that did not have a public blockchain, sending the funds through a variety of different wallets, and gambling online.

## II.    SENTENCING CALCULATION

### A.    Statutory Maximum Sentences.

The Court may impose the following statutory maximum sentence for Count One, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349:  20 years imprisonment, 3 years of supervised release, a fine of $250,000 or twice the gross gain of the offense (18 U.S.C.

§3571(d)), restitution, forfeiture, and a $100 special assessment.

The Court may impose the following statutory maximum sentence for Count Two, wire fraud in violation of 18 U.S.C. § 1343: 20 years imprisonment, 3 years of supervised release, a fine of $250,000 or twice the gross gain of the offense (18 U.S.C. §3571(d)), restitution, forfeiture, and a $100 special assessment.

The penalty for Count Three, aggravated identify theft in violation of 18 U.S.C. § 1028A, is a mandatory sentence of 2 years, to run consecutively to any other sentence, 1-year supervised release, a $250,000 fine, and a $100 special assessment.

The Court may impose the following statutory maximum sentence for Court Four, money laundering conspiracy in violation of 18 U.S.C. § 1956(h): 20 years of imprisonment, 3 years of supervised release, a fine of $500,000 or twice the value of the property involved in the transactions, and a $100 special assessment.

Thus, the total maximum sentence is: 62 years' imprisonment, which includes a 2-year mandatory sentence to be run consecutively to any other sentence imposed, 3 years' supervised release, a total fine of $750,000 plus $500,000 or twice the value of the property involved in the transaction charged in Count Four, whichever is greater, and a $400 special assessment. Full restitution shall be ordered. The defendant, who is not a citizen of the United States, is also subject to immigration proceedings, and will likely be removed from the United States following service of his sentence, denied citizenship, and denied admission to the United States in the future.

**B.**    **Sentencing Guidelines Calculation.**

The Probation Office determined that Counts 1, 2, and 4 are grouped and calculated the defendant's offense level as 30 (plus an additional 24 months for Count 3, as mandated by statute):

a.  The base offense level is 7, per §§2S1.1(a)(1) and 2B1.1(a)(1).

b.  Based on the total loss ($1,072,387.58), 14 levels are added, per §2B1.1(b)(1)(H).

c.  Because the offenses resulted in financial hardship to one or more victims (D.G.H., D.A., J.S., J.S.B., and D.W), 4 levels are added, per §2B1.1(b)(2)(B).

d.  2 levels are added for sophisticated means, per §§2B1.1(b)(10)(A) and (C).

e.  2 levels are added for the conviction under 18 U.S.C. § 1956, per §2S1.1(b)(2)(B).

f.  2 levels are added for sophisticated laundering, per USSG §2S1.1(b)(3).

g.  2 levels are added for obstruction of justice, per §3C1.1.

h.  3 levels are subtracted for acceptance of responsibility, per §3E1.1(a) and (b).

PSR ¶ 33-44.

The PSR notes that "with the exception of one specific offense characteristic (substantial financial hardship), each aspect of the total offense level calculation was also agreed to by the parties in their signed plea agreement." *Id.* at 32. With regard to this enhancement, at the time the parties entered into the plea agreement (September 3, 2025), the government was aware of fewer than five victims who had suffered substantial financial hardship. Since then, in preparation for sentencing, additional victims have submitted statements discussing the financial and emotional impact this offense had on them. The government does not dispute the proffered facts in these statements nor the probation office's determination that these facts constitute substantial financial hardship to more than five victims. However, the government honors the parties' plea agreement

and, therefore, agrees with the defendant that the substantial financial hardship enhancement should add two levels instead of four. Accordingly, the government submits that the total offense level is 28, not 30, and the resulting guideline range is 78-97 months, with an additional 24 months, bringing the total to 102-121 months.

## III.    ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### A.      Consideration of the 3553(a) Factors Regarding Imprisonment.

There can be no doubt that the defendant's criminal conduct in this case is serious. He scammed at least nine victims out of more than one million dollars – and those are just the victims whose funds could be traced back to him. He stole their hard-earned savings, and then he frittered it away on luxury goods, travel and online gambling. While the significant loss amount is certainly part of what makes this a serious offense, the emotional effects it had on the victims only compound the seriousness.  As detailed in their victim impact statements, they trusted the defendant's representations and believed he was there to help them secure their accounts – so much so, that they revealed their codes and passwords, enabling him to access their funds. But he saw that trust as a vulnerability – a way to take advantage of honest, hard-working people. Many of them describe the shame of knowing they had been tricked and the fear of wondering if it will happen again. Beyond the significant financial impact, the defendant has cloaked these victims in self-doubt and paranoia. His crime falls squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of a guideline sentence.

Turning to the defendant's history and characteristics, the PSR indicates that he has no criminal history points, no history of mental illness, some prior substance abuse, limited education, a troubled upbringing by a less than supportive family, and a brief history of employment.  PSR ¶¶ 63-68. The defendant's personal history cuts both ways in terms of the sentencing in this case.  On the one hand, despite his difficult upbringing and limited resources, he pulled himself up and proved that he is capable of earning an honest living; on the other, he

struggled to keep himself on that path and ultimately chose theft and dishonesty instead. As described in the PSR, the defendant's transition from working to stealing was based on laziness and poor spending decisions:

> I did that [transport manager job] for a year and a half and then stopped going to work as much. What really happened is that I got a credit card and maxed out on stupid shit. Then I paid my credit card, I started gambling and lost everything. And then that's when I started going online and doing fraud. . . I did exactly what I wasn't supposed to do.

In combination with the nature and circumstances of the offense, the government submits that a sentence within the guideline range is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2).

A substantial period of incarceration as recommended by the guidelines will hopefully deter the defendant from turning back to criminal conduct in the future, thereby protecting the public from further crimes of the defendant. There is also a significant need for general deterrence. With the adoption of cryptocurrency as an investment opportunity, online scams are only growing, especially among the youth, who may not fully appreciate the damage they can cause from behind their keyboards. A guideline sentence will discourage other individuals from engaging in this type of fraud.

In addition, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity.

There is no need in this case to adjust the sentence in this case "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). Indeed, the educational programming offered

by the Bureau of Prisons may afford the defendant new opportunities to learn job and life skills that can help him become a productive member of society.

The defendant has agreed to provide full restitution to the victims in this case, which has been calculated as $1,072,387.58. He has also agreed to forfeit two cellular phones, a laptop and a Trezor cryptocurrency wallet. Since the entry of the guilty plea, the government has identified another item to be forfeited:  the contents of a Kraken account held in the defendant's name. This account was seized pursuant to a seizure warrant and is included in the government's motion for a preliminary order of forfeiture.

**B.     <u>Supervised Release</u>.**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3)

("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, no term of supervised release is warranted, as the defendant is an illegal alien and will be removed from the United States upon release from incarceration.

## IV.    CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a significant sentence that fully accounts for the scope and severity of the defendant's criminal conduct  is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Sarah M. Wolfe*
SARAH M. WOLFE
ANTHONY CARISSIMI
Assistant United States Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:


Lawrence Bozzelli, Esq.
bozzelli.law@gmail.com




*/s Sarah M. Wolfe*
SARAH M. WOLFE
Assistant United States Attorney



DATED:  <u>August 11, 2026</u>